

Docket No._____
(to be filled in by the Clerk's Office)

BRUCE JOSEPH HATTRICK

      Petitioner,

v.

CITY OF KETCHIKAN,
JOHN KLEINEGGER,
SETH BRAKKE

      Respondent(s).

## MOTION SEEKING RELIEF FOR 14TH AMENDMENT EQUAL PROTECTION VIOLATIONS

### I.      Parties to This Motion

COMES NOW petitioner Bruce Joseph Hattrick, here in after Hattrick to this court pro-se asking

this court to grant him relief of the aforementioned violations from the City of Ketchikan, John

Kleinegger, and Seth Brakke.

### II.      Basis for Jurisdiction

Grounds, this court has jurisdiction under 42 USC 1983, Willowbrook v Olech 528 U.S. 1073

(2000).

Case 5:20-cv-00013-SLG   Document 1   Filed 10/09/20   Page 1 of 13

The City of Ketchikan through Ketchikan Public Utilities (here in after KPU) has repeatedly violated Hattrick's equal protection rights, singled him out, acted vindictively, arbitrarily, and irrationally with prejudice and bias towards Hattrick. *Under the Equal Protection Clause, no state shall "deny to any person within its jurisdiction the equal protection of the laws."* This provision requires that persons similarly situated should be treated alike. Specifically, the Equal Protection Clause protects against discriminatory action taken by states and their subdivisions.

## III.  Relief

Hattrick requests of this court to grant him relief in the amount of fifteen million dollars from the City of Ketchikan, and two million dollars from John Kleinegger in his personal capacity, and two million dollars from Seth Brakke in his personal capacity.

## IV.  Basis of This Motion

A. On or about 2016, Hattrick started a subdivision on his property located at Jackson Heights in Ketchikan and identified bank erosion on a neighboring property. Hattrick requested KPU to have the neighbors bank stabilized and repaired in accordance with the site development permit that the City of Ketchikan had issued to Hattrick's neighbor. About the same time, Hattrick was going through city documents regarding property lines and found a letter where the City of Ketchikan allowed the neighbor to trespass on Hattrick`s property, dig out trees, and do as the neighbor needed. Hattrick complained to the City of Ketchikan regarding the letter and ownership of the property, that was and is owned by Hattrick, not the City of Ketchikan. Seth Brakke responded to Hattrick's complaint and stated that they (the City of Ketchikan) were told by the adjacent landowner it was city property, so they allowed the trespass.

Seth also told Hattrick, they did not check if they owned the property or not, they just took the adjacent landowner's word. Following this complaint, Hattrick has had numerous problems with Seth Brakke.

B. Between 2016 – 2017, during the Jackson Heights project, Hattrick connected to existing city sewer main lines. The Jackson Heights project was engineered using the cities as-built diagrams. However, the cities as-built were inconsistent with the actual sewer main that was 70 feet from where the city as-built placed it. Hattrick also identified the main sewer line was 2 1/2 feet deeper than the as-built the City of Ketchikan claimed. To match the engineering design for Jackson Heights, Hattrick lifted grade prior to hooking up to the sewer main. After Hattrick laid two sticks of pipe, KPU through Seth Brakke, stopped the project. Hattrick was told the pipe could not remain as it was, and the pipes must be dug-up and relayed. Following the work stoppage, Hattrick contacted Bam Construction and paid them to dig up the pipe and relay it per Seth Brakke's demand. Bam Construction came to the job site spoke with KPU through Seth Brakee and was permitted to leave the pipe in the ground and would not have to dig up and relay the pipe that Hattrick had placed even though the city would not allow Hattrick to do the same. When Hattrick asked Seth Brakee why Bam Construction did not have to dig-up and relay the pipe that Hattrick could not leave in the ground, but Bam Construction could, Hattrick was not given a response.

C. During period of performance on Jackson Heights project the city through Seth Brakke claimed the banks had to be erosion control protected before they City of Ketchikan would allow lots to be built and houses placed on them. Hattrick did as the

Seth Brakke claimed had to be done with fabric and rip rap rock, even though the City of Ketchikan allowed the adjacent property owner to not stabilize the banks which was eroding Hattrick's property. Also, another adjacent property, owned by the City of Ketchikan, had erosion control with fabric and shot rock, which Hattrick asked to put fabric and shot rock down which the City of Ketchikan representatives would not allow Hattrick to do the same, which is a much cheaper way of going about erosion control but may not be as stable. Hattrick then complained to the City of Ketchikan that this was a violation of Equal Protection. The city of Ketchikan ignored Hattrick's complaint.

D.  During period of performance for the Jackson Heights project, Bam Construction had fused and placed the first 40 feet of HDPE 8" waterline. When Hattrick went to hook up to this line, the city through John Kleinegger would not allow him to fuse the new pipe to Bam Construction's pipe they required him to use an Romac Alpha compression coupler instead of fusing pipe which would be cheaper. Hattrick Installed the coupler per KPU's demands and continued fusing the rest of Jackson Heights Subdivision with his machine that had no data logger. During this time nothing was said regarding this machine fusion capability, not having a data logger or any other problems, however Seth Brakke worked for the sewer and building department not the water department at this time. Two other inspectors one named CV I do not know the name of the other inspected during the job.

E.  On or about the first quarter of 2020 Hattrick began developing more of his property, this portion was named Rosemary Loop. The beginning of Rosemary Loop already

had a 6" watermain stub out 38 feet long. Hattrick had engineered plans to connect to the cities watermain through these existing 6-inch stub outs that were placed in this spot just for Rosemary Loop development. However, when Hattrick submitted the engineer plans John Kleinegger and Seth Brakee would not allow Hattrick to connect to the engineered 6-inch lines. Instead, they wanted Hattrick to install an 8-inch lines, even though the two looped 6-inch lines would provide close to equivalent water Supply as one 8-inch line. Per John Kleinegger and Seth Brakke's demands Hattrick had the project re-engineered for 8-inch line. Hattrick bought the materials to connect to an 8" line the same materials the city required him to use on Jackson Heights he planned to use a Romac compression coupler, due to the fact the city had already placed a 8" stub out in the ground it was next to a culvert with little room, to dig a big enough hole to place a fusion machine within, due to the close proximity to the culvert. However, Hattrick was told he could not use a Romac coupler. John Klieinegger wanted the pipe fused and would not allow Hattrick to use the same type of system that was used on Jackson Heights. Hattrick complained he believe this to be an equal protection violation due to the fact Hattrick watched the city place a Romac compression coupler just 30 feet away from where he wanted to use it. Then weeks later, on another valve replacement project, Hattrick again watched the city use a compression coupler. KPU still insisted Hattrick could not use a coupler and had to fuse the pipe. Hattrick was told by John Kleinegger when constructing Jackson Heights and planning Rosemary Loop that nowhere in any system could use any electrofusion couplers, electrofusion saddles, and no electric fusion parts were to be allowed for use in the City of Ketchikan

F. On or about Summer of 2020 the city began construction on Rosemary Loop by removing the 6" stub out and putting in a new 8" stub out at the bottom of Rosemary Loop. KPU was fusing pipe, Hattrick watched them use an Electra fusion saddle. Later Hattrick talked to KPU service crew and was told they would allow electrofusion coupler if necessary, however John Kleinegger has told Hattrick he could not use no electrofusion parts.

G. On or about September 2020, Hattrick began construction of Rosemary Loop waterline he believed all Alaska Department of Environmental Conservation (here in after ADEC) paperwork and permits were completed for the water, when the sewer permits were completed this was only affirmed by the fact the city water service crew had placed an 8 inch stub out for the waterline, thus beginning construction of Rosemary Loop. Due to the fact KPU would not allow Hattrick to use a Romac coupler on Rosemary Loop like they had required on Jackson heights. Hattrick set up to fuse the pipe with the fusion machine he earlier had used on Jackson Heights, this is a pipe fuser that would fit in front of the culvert and was designed especially for in ditch fusing. However, as he was in the process of fusing the pipe, he was now told by the KPU inspector, now he could not use this fusion machine due to the fact it did not have a data logger. Hattrick explained he had used this fusion machine to fuse Jackson Heights water mainline pipe and no complaints were made at that time. Hattrick also stated most of the fusion machines used in Ketchikan do not have data loggers. When Hattrick was told he needed a data logger; the pipe was already in place in an open ditch ready to fuse. Hattrick then told the city this was harassment

and a blatant violation of the 14th Amendment Equal Protection Clause. Hattrick finished fusing the pipe and for safety purposes filled the ditch to ensure, no accidents while sorting out the data logger problem.

H.  During the filling of the ditch, mention was made that it may not be properly compacted. Hattrick explained at this point he was doing this for safety and was not going to put extra work into the project until the fusion issue was settled as he did not know if he would reopen the ditch and this was not going to be used as a through street for many years giving the ditch ample time to heal. The area was little more than a goat trail, that would end-up with having hundreds of dump trucks over it before it became a road that would be compacted. Due to the very wet conditions and the fact that Hattrick had just watched and photographed KPU's work crew dump many dump truck loads while backfilling their ditch with no compaction on an existing busy street, Hattrick believed this to be another Equal Protection violation.

I.  Around the time Hattrick was filling the ditch, Hattrick was asked if he had ADEC approval to construct. Hattrick told KPU Seth Brakke he thought it was sent to Mark Hison as it was Hattrick's understanding it was applied for at the same time as the sewer approval to construct. Once the ditch was filled in, backfilled for safety, Hattrick contacted the engineer who engineered the project to get copies of the ADEC approval to construct the water line. Hattrick was told due to all the confusion during the changeover from 6 inch to 8-inch main lines in the engineering, the ADEC approval to construct may not have been applied for. Hattrick told the engineer he was sure it was applied for as he did not think the city would have begun construction

on their part of the 8" stub out for Rosemary Loop without the ADEC approval to construct. The engineer got back with Hattrick and told him the approval to construct had not been applied for and he would get it going the next morning.

J. Part of the application for the ADEC approval to construct is KPU must sign a letter stating among other things that their system was capable of handling the extra 20 house's Hattrick was putting in. KPU through John Kleinegger refuses to sign the letter to the ADEC unless Hattrick signs a line extension agreement. The city has not used such an agreement in many years and has not required any other developers or landowners to sign such an agreement. this agreement in itself is another equal protection violation, as the project would have to be constructed to KPU's satisfaction, it would give the city ability to dictate terms which could be far above industry standards no matter what they allowed others to do in the City of Ketchikan. KPU has vindictively singled Hattrick out.

*Zeigler v. Jackson, 638 F.2d 776, 779 (5th Cir. 1981) (holding that differential treatment without a rational justification is arbitrary and violates Equal Protection); LeClair, 627 F.2d at 609-10 (stating that a state or local government official can violate the Equal Protection clause when they single out an individual with the malicious or bad faith intent to injure*

K. This line extension agreement gives KPU the power to violate Hattrick's 14th amendment equal protection rights. By stating all aspects of the project must be completed and done to KPU's satisfaction this gives KPU ultimate authority to make the signer of this document do as KPU wishes no matter how arbitrarily or vindictive. This means KPU can dictate terms far greater than industry standards no matter what KPU allows other people developing property In Ketchikan to do.

*Olech v. Vill. of Willowbrook, 160 F.3d 386, 387 (7th Cir. 1998), affd,120 S. Ct. 1073 (2000) (per curiam) (alleging that Village officials required the plaintiff alone to grant a nonstandard easement as a condition for municipal water services)*

L. John Kleinegger has stated he will not sign anything for Hattrick's project to proceed regarding ADEC or anything else, unless Hattrick will sign his line extension agreement Hattrick has stated this is extortion by trying to legalize John Kleinegger and the cities numerous violations of Hattrick's 14th amendment equal protection rights. At this time, the city attorney has also sent Hattrick this agreement stating construction may resume once the agreement is completed.

M. During correspondence with the City, John Kleinegger slandered Hattrick to the city's manager and assistant manager in an email by stating Hattrick restarted Jackson Heights without notifying the City of Ketchikan's Water Board for inspection, as they had no pictures of the rest of the Jackson Heights development. This was false and showed further vindictiveness and prejudice towards Hattrick. Hattrick notified the person he was referred to, who was a temporary inspector at the time. His name was CV. The other inspector Hattrick does not know the name of. The inspector named CV came to the job site on Jackson Heights inspected the coupler and thrust block said it looked good.

N. At This point KPU and John Kleinegger are maliciously impeding the development of Hattrick's property.

*Zeigler v. Jackson, 638 F.2d 776, 779 (5th Cir. 1981) (holding that differential treatment without a rational justification is arbitrary and violates Equal Protection); LeClair, 627 F.2d at 609-10 (stating that a state or local government official can*

*violate the Equal Protection clause when they single out an individual with the malicious or bad faith intent to injure); Torres v. Frias, 68 F. Supp.2d 935,943 (N.D. Ill. 1999) (acknowledging that state action based upon an illegitimate animus toward the plaintiff violates Equal Protection); Lockhart v. Cedar Rapids Cmty. Sch. Dist., 963 F. Supp. 805, 816 (N.D. Iowa 1997) (finding that the Equal Protection Clause protects citizens from irrational or arbitrary state action).*

O.  The City of Ketchikan, Seth Brakke and John Kleinegger have repeatedly been warned of equal protection violations and continually violate Hattrick's equal protection rights and through their actions have cost Hattrick money, and caused Hattrick a great deal of stress, duress, and sleepless nights worrying not knowing if he will be able to complete his projects without losing money due to the City of Ketchikan's blatant singling-out and harassment.  Hattrick has repeatedly not been allowed to have the same opportunities as another in a similar situation.

*Batra v. Board of Regents, 79 F.3d 717, 721-22 (8th Cir. 1996) (acknowledging that arbitrary or irrational state action that singles out an individual for different treatment can violate the Equal Protection Clause); Esinail,53 F.3d at 179-80 (holding an individual can bring a claim against a state official for vindictive action under the Equal Protection Clause of the Fourteenth Amendment); Rubinovitz, 60 F.3d at 911 (reaffirming that bad faith or malicious intent to injure an individual violates Equal Protection); Yerardi's Moody St. Rest. & Lounge, Inc. v. Board of Selectmen, 932 F.2d 89, 94 (1st Cir. 1991) (recognizing that malicious or bad faith intent to injure an individual can violate Equal Protection); Zeigler v. Jackson, 638 F.2d 776, 779 (5th Cir. 1981) (holding that differential treatment without a rational justification is arbitrary and violates Equal Protection); LeClair, 627 F.2d at 609-10 (stating that a state or local government official can violate the Equal Protection clause when they single out an individual with the malicious or bad faith intent to injure); Torres v. Frias, 68 F. Supp.2d 935,943 (N.D. Ill. 1999) (acknowledging that state action based upon an illegitimate animus toward the plaintiff violates Equal Protection); Lockhart v. Cedar Rapids Cmty. Sch. Dist., 963 F. Supp. 805, 816 (N.D. Iowa 1997) (finding that the Equal Protection Clause protects citizens from irrational or arbitrary state action); Masi, 691 N.Y.S.2d at 720-21 (recognizing individual or non-class based Equal Protection claims motivated by malicious or bad faith intent to injure); Thomas, 734 A.2d at 551 (holding that landowners established a prima facie case of selective treatment in violation of Equal Protection)*

**V. Certification**

Hattrick prays this court hold the City of Ketchikan, John Kleinegger, and Seth Brakke accountable for their actions and grant him the aforementioned relief.

Respectfully submitted this date of    October 7,    2020

Bruce Hattrick

I HEREBY CERTIFY that I have made service of this Motion by email to the City of Ketchikan via:
Mitch Seaver, Ketchikan City Attorney at email:  mitchs@city.ketchikan.ak.us;
John Kleinegger, Water Division Manager at email:  johnk@city.ketchikan.ak.us; and
Seth Brakke, Assistant Water Division Manager at email:  sethb@city.ketchikan.ak.us

## V.    Certification

Hattrick prays this court hold the City of Ketchikan, John Kleinegger, and Seth Brakke

accountable for their actions and grant him the aforementioned relief.

Respectfully submitted this date of    October 7,    2020

Bruce Hattrick

I HEREBY CERTIFY that I have made service of this Motion by email to the City of Ketchikan
via:
Mitch Seaver, Ketchikan City Attorney at email:   mitchs@city.ketchikan.ak.us;
John Kleinegger, Water Division Manager at email:   johnk@city.ketchikan.ak.us; and
Seth Brakke, Assistant Water Division Manager at email:   sethb@city.ketchikan.ak.us

Bruce Hattrick
617-7530
631 cook ST
Ketchikan AK, 99901

Bruce Hattrick@Gmail.com

Bruce Hattrick
631 Cook St
Ketchikan Ak. 99901



9171 9690 0935 0047 6238 49

$7.80
US POSTAGE
FIRST-CLASS
06251084767T
99901
000011199

U.S. District Court
222 W. 7th Ave.
Room 229  Box 4
Anchorage  Ak. 99513