# UNITED STATES DISTRICT COURT
for the
District of Alaska

**RECEIVED**
NOV 1 9 2020
CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

Bruce Hattrick

*Plaintiff(s)*
(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

-v-

CITY OF KETCHIKAN
JOHN KLEINEGGER, and
SETH BRAKKE

*Defendant(s)*
(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)

Case No. 5:20-cv-00013-SLG
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ✓ Yes ☐ No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Non-Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Bruce Hattrick |
| Address | 631 Cook Street |
| City | Ketchikan |
| State | AK |
| Zip Code | 99901 |
| County | Ketchikan Gateway Bough |
| Telephone Number | 907 617 7530 |
| E-Mail Address | brucehattrick@gmail,com |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | City Of Ketchikan |
| Job or Title *(if known)* | city attorney Mitch Seaver |
| Address | 334 Front Street |
| City | Ketchikan |
| State | AK |
| Zip Code | 99901 |
| County | Ketchikan Gateway Bourgh |
| Telephone Number | 907 228 5611 |
| E-Mail Address *(if known)* | mitchs@city.ketchikan.ak.us |

☐ Individual capacity   ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | JOHN KLEINEEGGER |
| Job or Title *(if known)* | WATER DIVISION MANAGER |
| Address | 2930 Tongass Ave. |
| City | ketchikan |
| State | Ak |
| Zip Code | 99901 |
| County | Ketchikan gateway bourgh |
| Telephone Number | 907 228 2441 |
| E-Mail Address *(if known)* | johnk@city.ketchikan.ak.us |

☑ Individual capacity   ☐ Official capacity

Defendant No. 3
Name: SETH BRAKKE
Job or Title (if known): ASSISTANT WATER VDIVISION MANAGER
Address: 2930 Tongass Ave.
City: ketchikan    State: Ak    Zip Code: 99901
County: Ketchikan gateway bourgh
Telephone Number: 907 228 4734
E-Mail Address (if known): sethb@city.ketchikan.ak.us

[✓] Individual capacity    [ ] Official capacity

Defendant No. 4
Name:
Job or Title (if known):
Address:
City:    State:    Zip Code:
County:
Telephone Number:
E-Mail Address (if known):

[ ] Individual capacity    [ ] Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against (check all that apply):

[ ] Federal officials (a *Bivens* claim)

[✓] State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?
Without rational justification, the defendants have repeatedly, vindictively violated Hattricks equal protection right that a person in a similar situation should be treated equal or given similar opportunity. Zeigler v. Jackson, 638 F.2d 776, 779 (5th Cir. 1981) The defendants are also attempting to extort Hattrick into giving up his equal protection rights, by requiring him to sign an agreement that they have not required anyone else in similar situation to sign.

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

The City of Ketchikan's policy, custom or usage was the "moving force" behind the deprivation of Hattricks equal protection rights. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Under color of law John Kleinegger and Seth Brakke have intentionally acted arbitrarily and irrationally. Have used there possion of authority in the City of Ketchikan Water Department to not allow Hattrick the same opportunity as others in a similar situation. Graham, 473 U.S. at 166.     SEE ALSO ATTACHED STATEMENT

## III. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?
The events occurred on Hattricks Jackson Street Property in the city of Ketchikan, Alaska.

See attached statement

B. What date and approximate time did the events giving rise to your claim(s) occur?

See Attached statement

C. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See attached statement

## Statement of Claim

I. **Basis of This Complaint**

   A. On or about 2016, Hattrick started a subdivision on his property located at Jackson Heights in Ketchikan Alaska, and identified bank erosion on a neighboring property, that was beginning to erode his property. Hattrick requested KPU to have the neighbors bank stabilized and repaired in accordance with the site development permit that the City of Ketchikan had issued to Hattrick's neighbor. About the same time, Hattrick was going through city documents regarding property lines and found a letter where the City of Ketchikan allowed the neighbor to trespass on Hattrick`s property, dig out trees, and do as the neighbor needed. Hattrick complained to the City of Ketchikan regarding the letter and ownership of the property, that was and is owned by Hattrick, not the City of Ketchikan. Seth Brakke responded to Hattrick's complaint and stated that they (the City of Ketchikan) were told by the adjacent landowner it was city property, so they allowed the trespass. Seth also told Hattrick, they did not check if they owned the property or not, they just took the adjacent landowner's word. Following this complaint, Hattrick has had numerous problems with Seth Brakke.

B. Between 2016 – 2017, during the Jackson Heights project, Hattrick connected to existing city sewer main lines. The Jackson Heights project was engineered using the cities as-built diagrams. However, the cities as-built were inconsistent with the actual sewer main that was 70 feet from where the city as-built placed it. Hattrick also identified the main sewer line was 2 1/2 feet deeper than the as-built the City of Ketchikan claimed. To match the engineering design for Jackson Heights, Hattrick lifted grade when hooking up to the sewer main. After Hattrick laid two sticks of pipe, KPU through Seth Brakke, stopped the project. Hattrick was told the pipe could not remain as it was and he could not lift the grade, and the pipes must be dug-up and relayed. Following the work stoppage, Hattrick contacted Bam Construction and paid them over $8000 (eight thousand dollars) to dig up the pipe and relay it per Seth Brakke's demand. Bam Construction came to the job site spoke with KPU through Seth Brakee and was permitted to leave the pipe in the ground and would not have to dig up and relay the pipe that Hattrick had placed even though the city would not allow Hattrick to do the same. When Hattrick complained to city employees why Bam Construction did not have to dig-up and relay the pipe that Hattrick could not leave in the ground, but Bam Construction could, Hattrick was not given a response. Scott Steward and Devon Steward were there and witnessed the shut down. There were also other city inspectors and employees present during this process.

C. During period of performance on Jackson Heights project the city through Seth Brakke claimed the banks had to be erosion control protected before the City of Ketchikan would allow lots to be built and houses placed on them. Hattrick did

as Seth Brakke claimed had to be done with fabric and rip rap rock, even though the City of Ketchikan allowed the adjacent property owner to not stabilize the banks which was eroding Hattrick's property. Also, another adjacent property, owned by the City of Ketchikan, had erosion control with fabric and shot rock, which Hattrick asked to put fabric and shot rock down which the City of Ketchikan representatives would not allow Hattrick to do the same, which is a much cheaper way of going about erosion control but may not be as stable. Hattrick then complained to the City of Ketchikan that this was a violation of Equal Protection. The city of Ketchikan ignored Hattrick's complaint.

D. During period of performance for the Jackson Heights project, Bam Construction had fused and placed the first 40 feet of HDPE 8" waterline. When Hattrick went to hook up to this line, the city through John Kleinegger would not allow him to fuse the new pipe to Bam Construction's pipe they required him to use an Romac Alpha compression coupler instead of fusing pipe which would be cheaper. Hattrick Installed the coupler per KPU's demands and continued fusing the rest of Jackson Heights Subdivision with his machine that had no data logger. During this time nothing was said regarding this machine fusion capability, not having a data logger or any other problems, however Seth Brakke worked for the sewer and building department not the water department at this time. Two other inspectors one named CV I do not know the name of the other inspected during the job. Ernie Hamilton of Three Dog Construction witnessed and placed the waterline project at Jackson Heights.

E. On or about the first quarter of 2020 Hattrick began developing more of his property, this portion was named Rosemary Loop. The beginning of Rosemary Loop already had a 6" watermain stub out 38 feet long. Hattrick had engineered plans to connect to the cities watermain through these existing 6-inch stub outs that were placed in this spot just for Rosemary Loop development. However, when Hattrick submitted the engineer plans John Kleinegger and Seth Brakee would not allow Hattrick to connect to the existing engineered 6-inch line, that were specifically installed for the development of Rosemary Loop . Instead, they wanted Hattrick to install an 8-inch lines, even though the two looped 6-inch lines would provide close to equivalent water Supply as one 8-inch line. Per John Kleinegger and Seth Brakke's demands Hattrick had the project re-engineered for 8-inch line. Hattrick bought the materials to connect to an 8" line the same materials the city required him to use on Jackson Heights he planned to use a Romac compression coupler, due to the fact the city had already placed a 8" stub out in the ground it was next to a culvert with little room, to dig a big enough hole to place a fusion machine within, due to the close proximity to the culvert. However, Hattrick was told he could not use a Romac coupler. John Klieinegger without valid reason wanted the pipe fused and would not allow Hattrick to use the same type of system that was used on Jackson Heights. Hattrick complained he believe this to be an equal protection violation due to the fact Hattrick watched the city place a Romac compression coupler just 30 feet away from where he wanted to use it. Then weeks later, on another valve replacement project, Hattrick again watched the city use another compression

coupler. KPU still insisted Hattrick could not use a coupler and had to fuse the pipe. Hattrick was told by John Kleinegger when constructing Jackson Heights and planning Rosemary Loop that nowhere in any system could he use any electrofusion couplers, electrofusion saddles, and no electric fusion parts were to be allowed for use in the City of Ketchikan

F. On or about Summer of 2020 the city began construction on Rosemary Loop by removing the 6" stub out and putting in a new 8" stub out at the bottom of Rosemary Loop. KPU was fusing pipe, Hattrick watched them use an Electra fusion saddle. Later Hattrick talked to KPU service crew and was told they would allow electrofusion coupler if necessary, however John Kleinegger has told Hattrick he could not use no electrofusion parts, even though the city crew uses them.

G. On or about September 2020, Hattrick began construction of his part of Rosemary Loop waterline by connecting to the new line the city had just placed. He believed all Alaska Department of Environmental Conservation (here in after ADEC) paperwork and permits were completed for the water, when the sewer permits were completed this was only affirmed by the fact the city water service crew had placed a new 8 inch stub out for the waterline, thus beginning construction of Rosemary Loop which should not happen if the ADEC, paper work was not complete. Due to the fact KPU would not allow Hattrick to use a Romac coupler on Rosemary Loop like they had required on Jackson heights. Hattrick set up to fuse the pipe with the fusion machine he earlier had used on

Jackson Heights, this is a pipe fuser that would fit in front of the culvert and was designed especially for in ditch fusing. However, as he was in the process of fusing the pipe, he was now told by the KPU inspector, now he could not use this fusion machine due to the fact it did not have a data logger. Hattrick explained he had used this fusion machine to fuse Jackson Heights water mainline pipe and no complaints were made at that time. Hattrick also stated most of the fusion machines used in Ketchikan do not have data loggers (others not using a data logger were allowed to fuse pipe). When Hattrick was told he needed a data logger; the pipe was already in place in an open ditch ready to fuse ,the fusion process had already started. Hattrick then told the city this was harassment and a blatant violation of the 14th Amendment Equal Protection Clause. Hattrick finished fusing the pipe and for safety purposes filled the ditch to ensure, no accidents while sorting out the data logger problem.

H. During the filling of the ditch, mention was made that it may not be properly compacted. Hattrick explained at this point he was doing this for safety and was not going to put extra work into the project until the fusion issue was settled as he did not know if he would reopen the ditch and this was not going to be used as a through street for many years giving the ditch ample time to heal. The area was little more than a goat trail, that would end-up with having hundreds of dump trucks over it thus compacting it, before it became a road. Due to the very wet conditions and the fact that Hattrick had just watched and photographed KPU's work crew dump many dump truck loads while backfilling their ditch with no compaction on an existing busy street, Hattrick believed this

to be another Equal Protection violation. Ernie Hamilton and another laborer from Three Dog Construction were on the project and witnessed most of the violations that have been described.

I. Around the time Hattrick was filling the ditch, Hattrick was asked if he had ADEC approval to construct. Hattrick told KPU Seth Brakke he thought it was sent to Mark Hison as it was Hattrick's understanding it was applied for at the same time as the sewer approval to construct. Once the ditch was filled in, backfilled for safety, Hattrick contacted the engineer who engineered the project to get copies of the ADEC approval to construct the water line. Hattrick was told due to all the confusion during the changeover from 6 inch to 8-inch main lines in the engineering, the ADEC approval to construct may not have been applied for. Hattrick told the engineer he was sure it was applied for as he did not think the city would have begun construction on their part of the 8" stub out for Rosemary Loop without the ADEC approval to construct. The engineer got back with Hattrick and told him the approval to construct had not been applied for and he would get it going the next morning.

J. Part of the application for the ADEC approval to construct is KPU must sign a letter stating among other things that their system was capable of handling the extra 20 house's Hattrick was putting in. KPU through John Kleinegger refuses to sign the letter to the ADEC unless Hattrick signs a line extension agreement. The city has not used such an agreement in many years and has not required any other developers or landowners to sign such an agreement. this agreement

S.G.C. 7

in itself is another equal protection violation, as the project would have to be constructed to KPU's satisfaction, no matter if the city was arbitrary or vindictive, it would give the city ability to dictate terms which could be far above industry standards no matter what they allowed others to do in the City of Ketchikan. KPU has vindictively singled Hattrick out.

K. This line extension agreement gives KPU the power to violate Hattrick's 14th amendment equal protection rights. By stating all aspects of the project must be completed and done to KPU's satisfaction this gives KPU ultimate authority to make the signer of this document do as KPU wishes no matter how arbitrarily or vindictive. This means KPU can dictate terms far greater than industry standards no matter what KPU allows other people developing property In Ketchikan to do. In fact the defendants have already shown their desire to single Hattrick out and require a great deal more of him than others in similar situations.

L. John Kleinegger has stated he will not sign anything for Hattrick's project to proceed regarding ADEC or anything else, unless Hattrick will sign his line extension agreement Hattrick has stated this is extortion by trying to legalize John Kleinegger and the cities numerous violations of Hattrick's 14th amendment equal protection rights, by requiring more of him than others in a similarly situation and not allowing him the same opportunity as others in a similar situation.The city has ignored Hattrick's complaints. At this time, the city

attorney has also sent Hattrick this agreement stating construction may resume once the agreement is completed.

M. During correspondence with the City, John Kleinegger slandered Hattrick to the city's manager and assistant manager in an email by stating Hattrick restarted Jackson Heights without notifying the City of Ketchikan's Water Board for inspection, as they had no pictures (or lost the pictures) of the rest of the Jackson Heights development. This was false and showed further vindictiveness and prejudice towards Hattrick. Hattrick notified the person he was referred to, who was a temporary inspector at the time. His name was CV. The other inspector Hattrick does not know the name of. The inspector named CV came to the job site on Jackson Heights inspected the coupler and thrust block said it looked good.

N. At This point KPU, John Kleinegger, Seth Brakke are maliciously impeding the development of Hattrick's property, by not allowing the ADEC paperwork to proceed, even though they have started their portion of the project without it.

O. The City of Ketchikan, Seth Brakke and John Kleinegger have repeatedly been warned of equal protection violations and continually violate Hattrick's equal protection rights and through their actions have cost Hattrick money, and caused Hattrick a great deal of stress, duress, and sleepless nights worrying not knowing if he will be able to complete his projects without losing money due to the City of Ketchikan's blatant singling-out and harassment.

S.O.C. 9

Hattrick has repeatedly not been allowed to have the same opportunities as another in a similar situation.

## IV. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

No broken bones, however, there is a great deal of mental injury's due to stress, sleepless nights of worry, due to the economic damage caused The defendants refusal to allow the necessary steps that would allow Hattrick to continue his job, unless Hattrick signs an agreement with the city that would require Hattrick to wave many equal protection rights, which is causing stomach problems, as well as may quite possibly drive Hattrick's home building to bankruptcy, if the city is allowed to prolong the work stoppage. Thus more mental and emotional stress.

## V. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Due to the multiple intentional violation by the defendants, and the fact that with each violation the defendants were warned of equal protection laws, which the defendants continued to ignore and violate even with the warnings. Hattrick request Fifteen Million Dollars from the City of Ketchikan, two million dollars from John Kleineegge and two million dollars Seth Brakke, Due to the fact this is intentional stress caused by the defendants. Other basis backing this claim the defendants actions may quite possibly drive Hattrick's home building to bankruptcy, if the defendants are allowed to prolong the work stoppage. Thus more mental and emotional stress. The financial injuries, also include the loss of crew due to work stoppage as it is very difficult to get good help in such a remote area as south east Alaska, once you lose the help it cost a great deal to again get a help that can do a good job. The defendants know this and is using this and the fact Hattrick has a new $510,000 home sitting with no water and a road that can not be finished, due to defendants actions, to pressure Hattrick to signing an agreement that would take away equal protection rights, before they will takes the steps to allow Hattrick to continue with his projects, which amount to extortion. It is now to the point that bad weather has set in for the winter although the project that should already be done, is going to have to now wait till we again have better weather, thus costing Hattrick the work season, and quite possibly his livelihood.

SEE ATTACHMENT FOR MORE INFORMATION

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 11-17-2020

Signature of Plaintiff: *Bruce Hattrick* Pro Se

Printed Name of Plaintiff: Bruce Hattrick

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

City | State | Zip Code

Telephone Number: 907 617 7530

E-mail Address: brucehattrick@gmail.com

Bruce Hottrock
631 Cook St
Ketchikan AK 99901

U.S. District Court
22 W. 7TH Ave Room 229 Box 4
Anchorage, AK 99513