Laura J. Eakes
Walker & Eakes, LLC
329 F Street, Ste 200
Anchorage, AK 99501
Phone (907) 272-9255
Fax (907) 27-9256
Laura@walkereakes.com

Attorney for Defendant City of Ketchikan

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| BRUCE JOSEPH HATTRICK, | ) |
| Plaintiff, | ) |
| v. | ) |
| CITY OF KETCHIKAN, JOHN KLEINEGGER AND SETH BRAKKE, | ) Case No. 5:20-cv-00013-SLG |
| Defendants. | ) |

## OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Bruce Hattrick has filed a "Motion to Compel" which is functionally a motion for summary judgment, and the parties have agreed that it should be treated this way. The central issue of the motion--and of his lawsuit--is whether the actions of the City of Ketchikan in relation to Hattrick's proposed subdivision at Rosemary Loop have violated the Equal Protection clause of the Constitution. As we shall see, there has been no such Constitutional violation. The City has enforced its own ordinances in requiring that Hattrick enter into a standard utility extension agreement in order to proceed with the water utility extension for the proposed subdivision. Prior extensions which were made without a written agreement do not

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT
Page 1 of 13

Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 1 of 13

render the present enforcement unconstitutional. Many such projects were completed pursuant to general contracts and in other cases the City performed the line extension itself. In addition, the nature of Hattrick's proposal, along with prior and present dealings with Hattrick himself have underscored a need to establish firm ground rules which ensure that public policy will be enforced. There has been no equal protection violation, and the City should be granted summary judgment on that question. Resolution of the extension agreement question will allow the development proposal to proceed. There may be other matters relating to the prior Jackson subdivision which Hattrick wishes to pursue, but these will be addressed by subsequent motion practice.

A.  **Factual Background.**

There is an ongoing dispute between Mr. Hattrick and the City of Ketchikan over his planned development. Hattrick has proposed a subdivision for property in Ketchikan identified as Rosemary Loop 1080, and these new properties will need to be connected to the City water supply. See Permit Application dated April 21, 2021 [Exhibit A]; Affidavit of John Kleinegger [Exhibit B]. However, Mr. Hattrick has apparently started construction of the water system without approval. Id. It is not clear what other steps he has taken without City approval.

Ketchikan code has long required that "Once the customer and KPU determine that a line extension will be made, the customer and KPU will enter into a written agreement to construct the utility line extension." KMC 11.06.010(h)(1). This code provision has only been enforced once before. See Affidavit [Exhibit B]. The City has not enforced the requirement of a utility extension agreement because either there was already been a written construction contract in place (rendering a specific written utility agreement moot) or the City was self-

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 2 of 13

Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 2 of 13

Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

performing the work in question. Id. In this case, there is no such construction contract in place and the City is not performing the work itself. In addition, the City has had disagreements with Hattrick over utility construction. Id. For example, Hattrick has already used a method of pipe weld which does not provide reviewable data of the technical details of the connection, making it impossible to verify the quality of the welds. Id. The city has identified other areas of concern as well. See Letter of John Kleinegger dated September 25, 2020 [Exhibit C]. As the City's representative explained:

> In 1988 in a similar environment, KPU used Megalugs (another proprietary joint restraint product) to install a new water main beneath Thomas Street which is also exposed to salt water at high tides. Megalugs use multiple ductile iron wedges that are each torqued down to firmly grip the ductile iron pipe segments and then form a water-tight mechanical joint. Thomas Street has already experienced corrosive failure of multiple gripping wedges that were holding the ductile iron mechanical joints together which caused severe leaks. KPU has already replaced them once and they are likely to require replacement again fairly soon.
>
> Being susceptible to failure in corrosive environments is the reason KPU is not enamored with using unproven Romac Alphas to couple together segments of a HDPE water main which, if properly installed, has an expected useful service life of over 100 years. The life cycle cost is the prime criteria for installation of underground utilities that are expensive to repair or replace, not minimal initial cost.

Letter of Kleinegger [Exhibit C]. The City had reason to believe that Hattrick had used such improper coupling in the earlier Jackson Heights development. Id.; Affidavit. In any case, because Hattrick failed to preserve or present evidence of what coupling was actually used in Jackson Heights, the City has no way of knowing how sound the connection is or what maintenance issues may arise in the future. Id.

A written extension agreement will formalize the relationship of the parties in the proposed Rosemary Loop development and make certain that the City remains in control of what methods are used to link to its water main. It is certainly hoped that there won't be any further disagreements over the methods utilized to link the City's water supply to the new

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 3 of 13

Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 3 of 13

Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

development. However, the responsibility for overseeing this work is the City's as a matter of public policy as expressed in code, and it is not unfair to implement this policy at this time. Hattrick is not being shut out from opportunities or subjected to some kind of special regulation so onerous that it will prevent development.

Nevertheless, Hattrick sued the City and two City employees under 42 U.S.C. § 1983 based on the alleged infringement of his Constitutional right to equal protection. See Complaint. Hattrick claims that he has not been treated the same as others in a similar situation and "are also attempting to extort Hattrick into giving up his equal protection rights, by requiring him to sign an agreement that they have not required anyone else in a similar situation to sign." See Complaint for Violation of Civil Rights (Non-Prisoner) 3/6. Hattrick's pending "Motion to Compel," which is in form a motion for summary judgment, focuses on the dispute over whether the City can enforce its code and require him to enter into an extension agreement. See Plaintiff's Motion to Compel/MSJ at 4. Other matters involving the Jackson Subdivision are not addressed in the pending motion and may be time-barred. Potential technical disputes over the pending Rosemary Loop subdivision are by definition unripe for review. As the City will show below, the decision to enforce the code requirement for a written utility extension agreement was made with a rational basis and in furtherance of public policy. Hattrick's right to equal protection was not violated. He must proceed under code to sign an extension agreement if he wishes to move forward on the Rosemary Loop subdivision.

B. **The Standard for Summary Judgment.**

Under federal rules, summary judgment may be granted "where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 4 of 13
Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 4 of 13

Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

See FRCP 56(c). The purpose of the process is to determine if there is a genuine need for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Only admissible evidence may be considered on motions for summary judgment. See FRCP 56(e); Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). In this case, the facts under review are not in substantial dispute. The City is enforcing its code requirement that an extension agreement be signed. Hattrick has refused to sign any such agreement. The code requirement has not been enforced in the context of prior developments including the earlier Jackson subdivision. The legal question is whether the City's decision violates Hattrick's right to equal protection.

C.      **The City Has Lawfully Opted To Enforce Its Own Code.**

The City of Ketchikan is organized as a Home Rule City under Alaska law. As such, it possesses all powers not expressly prohibited by law. AS 29.04.010. It has power to enforce ordinances and enter into agreements. AS 29.35.010. Accordingly, Ketchikan has passed a series of ordinances governing the expansion of its utility systems, including water and sewage. Under this code: "Each line extension requested requires that a contract be entered into between the applicant requesting utility service and KPU. This contract will provide for transferring ownership of the completed utility extension to KPU. All facilities shall become and remain the property of KPU." KMC 11.06.010(a). The City is to be the "sole judge as to whether a request for utility service requires that a line extension be constructed." KMC 11.06.010(b). The decisions "will be based upon sound engineering practices and the best interests of KPU." Id. More specifically: "No utility line extension constructed by a licensed contractor shall become operational until authorization therefor, accompanied by the duly

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 5 of 13
Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 5 of 13

Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

signed contract, has been received from the utilities manager's office. The required contract is for the purpose of ensuring that proper design and inspection methods are utilized, as well as to protect KPU from potential liability." KMC 11.06.010(f). The validity of these provisions is not in question--only the ability of the City to enforce them in the context of Hattrick's pending development.

The proposed extension agreement has been drawn from City code. This can be seen by comparing the details of the contract with the code. First of all, the agreement is itself required under code. See KMC 11.06.010(b); (f); (h)(1). The agreement as drafted requires that the extension be designed by KPU or by an engineer approved by KPU. See UEA at 1. This reflects the code requirements. See KMC 11.06.010(e) 11.06.020(b)(2); 11.06.030(a)(1). The agreement gives KPU "full control and discretion over all design decisions." See UAE at 1. This is reflected in code. See KMC 11.06.010(c); 11.06.020(b)(2). The contract requires that an easement be conveyed to KPU. UAE at 8. This is required per code as well. See KMC 11.06.010(b); 11.06.030(a)(3). This provision, in turn, explains why KPU may require the extension to "Improve the use, maintenance, accessibility or efficiency of KPU operations and facilities." UEA at 2. And the protection from liability is in keeping with the public policy of protecting the City "from potential liability." KMC 11.060.010(f).

As discussed above, the City opted to enforce its ordinance due to prior disagreements with Hattrick regarding water utility extensions. The proposed agreement is in keeping with the ordinance, which in turn represents public policy. The first question to consider is whether the facts show any potential equal protection claim. Hattrick's basic theory is that the disparate treatment he's received in his Rosemary Loop subdivision constitutes a violation of the Equal

Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 6 of 13
Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 6 of 13

Protection clause. The City agrees that it has not previously enforced the requirement of a written agreement for the utility extension.

A municipality may be held liable for deprivation of a federal civil right under color of law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The 14th Amendment guarantees equal protection of the laws. U.S. Const. Amend. XIV. The equal protection clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 105 S. Ct. 3249, 3254 (1985). When subjected to an equal protection challenge, legislation is presumed to be valid "and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Id. Certain legislative subjects are subject to heightened review not applicable here. Id. (noting examples of race and sex).

While challenge is often brought by a class of aggrieved parties, the equal protection clause also protects a "class of one" in limited circumstances. Of course, the mere fact that a law is enforced in one case but not in another is not a basis for an equal protection claim. As the courts have explained, if divergent treatment from one person to another were sufficient to support an equal protection claim, there would be no end to such claims. Lauth v. McCollum, 424 F.3d 631, 634 (7th Cir. 2005) ("If that is the law and any unexplained or unjustified disparity in treatment by public officials is therefore to be deemed a prima facie denial of equal protection, endless vistas of federal liability are opened."). The disparate treatment of one person over another (or in this case, one person's project over prior projects) must be shown to have no rational basis. See FCC v. Beach Communications, 508 U.S. 307, 315 (1993).

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 7 of 13
Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 7 of 13

Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

Enacted codes and ordinances are given a very high presumption of validity. Id. The party seeking to block enforcement of such codes as unconstitutional must "negative every conceivable basis which might support it." Id. (citing Lehnhausen v. Lake Shore Auto Parts Co., 93 S. Ct. 1001, 1006 (1973). This is not a mere procedural hurdle, but rather a core aspect of the separation of powers. As the high court explained:

> A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.

Carmichael v. S. Coal & Coke Co., 57 S. Ct. 868, 872–73 (1937). The circumstances where a "class of one" plaintiff may stop governmental action are therefore very limited.

Courts will intervene when a particular person is subjected to disparate treatment that constitutes "intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Vill. of Willowbrook v. Olech, 120 S. Ct. 1073, 1075 (2000). In the Olech case, the city had demanded without justification or legislative support that the homeowner provide a 33-foot easement as a precondition to connecting to the water supply. Id. As the Court observed, similarly situated owners had only been required to provide a 15-foot easement which was "clearly adequate." Id. The city was not simply enforcing set policy, but rather was creating a wholly new policy for the express purpose of blocking a particular person's development. Id. The Court held that the

Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 8 of 13
Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 8 of 13

plaintiff had " been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" Id. The Court subsequently explained:

> When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.' Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment'

Engquist v. Oregon Dep't of Agr., 128 S. Ct. 2146, 2153 (2008). More fundamentally, the shift in easement size was not the product of broad policy, but rather an arbitrary ruling imposed on one landowner only.

In the instant case, proceeding without a written agreement not only runs against code, it risks bogging the entire project down in point-by-point fights with Hattrick over the methods of connection to the City's water system. The decision was not arbitrary or made out of malice, but was taken in order to ensure that the code as a whole would be properly adhered to by both parties. See Affidavit [Exhibit B]. It is, after all, the City's water system and the City owes an overriding duty to the public to ensure that the system provides clean water. Code gives the City the authority to regulate that system, even though Hattrick is developing the subdivision. The City hopes to work well with Hattrick as this development proceeds, but it does not want to have a battle over every detail or run the risk of unknown risks being buried underground. Specifically, it does not want connections used without its oversight and approval. Thus the decision to enforce the longstanding requirement for an express extension agreement.

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 9 of 13

Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 9 of 13

Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

## CONCLUSION

Since a rational basis has been established for the City's decision, and since the ordinance being enforced is well grounded in express public policy, Hattrick cannot block this action on equal protection grounds. More specifically, he cannot force the City to refrain from enforcing its ordinance requiring a written agreement for the utility extension. Nor can he collect damages from the decision to enforce the law. To hold otherwise would effectively bar enforcement of any ordinance which had not previously been enforced. Or even to bar enforcement of an ordinance in one case when it was not enforced in another. So long as there is a rational basis for the decision, the individual in the "class of one" for equal protection purposes has no grounds for objection. Here, the rational basis has been well established. The Court should deny Hattrick's motion and order that the City may lawfully enforce the requirement of an extension agreement. Hopefully the development will proceed properly from that point and the required approvals can be sought once the City is assured that the extension of its water utility is properly constructed and designed.

DATED this 10th day of May 2021 at Anchorage, Alaska.

> WALKER & EAKES, LLC
> Attorney for Defendants
> CITY OF KETCHIKAN, JOHN
> KLEINEGGER AND SETH BRAKKE
>
> By: /s/ Laura J. Eakes
> Laura Eakes
> Alaska Bar No. 0011072

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 10 of 13
Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 10 of 13

Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 10th day of May 2021 by:

  _X_ : Mail
  _X_ : Email
  ___ : Facsimile
  ___ : Hand Delivery
  ___ : Courier

To the following persons:

Bruce Hattrick – pro se
631 Cook Street
Ketchikan AK 99901
brucehattrick@gmail.com

  /s/ Amable Rosa
    Walker & Eakes, LLC

170.461/Pld/ 2021-05-10 Opp & X-MPSJ

Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 11 of 13
Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 11 of 13

Laura J. Eakes
Walker & Eakes, LLC
329 F Street, Ste 200
Anchorage, AK 99501
Phone (907) 272-9255
Fax (907) 27-9256
Laura@walkereakes.com

Attorney for Defendant City of Ketchikan

## UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

| | |
|---|---|
| BRUCE JOSEPH HATTRICK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| CITY OF KETCHIKAN, JOHN KLEINEGGER AND SETH BRAKKE, | ) Case No. 5:20-cv-00013-SLG ) ) |
| Defendants. | ) ) ) |

## ORDER RE OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

This Court, having reviewed the plaintiff's Motion to Compel (deemed Motion for Summary Judgment) and the defendants' cross motion for partial summary judgment, and any oppositions thereto, hereby orders that the requirement that a signed extension agreement be in place as a prerequisite for the proposed water utility extension for the Rosemary Loop subdivision does not violate the equal protection rights of the plaintiff.

DATED: _____          _____
                                Honorable Judge Gleason
                                US District Court Judge


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 10th day of May 2021 by:

    _X_ : Mail
    _X_ : Email
    ___ : Facsimile
    ___ : Hand Delivery
    ___ : Courier

To the following persons:

Bruce Hattrick – pro se
631 Cook Street
Ketchikan AK 99901
brucehattrick@gmail.com


    _/s/ Amable Rosa_
       Walker & Eakes, LLC

170.461/Pld/ 2021-05-10 Opp & X-MPSJ

Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

*Hattrick v Ketchikan*; Case No. 5:20-cv-00013-SLG
OPPOSITION TO DEEMED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 13 of 13
Case 5:20-cv-00013-SLG   Document 27   Filed 05/11/21   Page 13 of 13